1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALEXIS RONALDO AYALA CAJINA,              No.  1:25-cv-01566-DAD-AC (HC)

12              Plaintiff,

13        v.                                   ORDER GRANTING PETITIONER'S
                                               MOTION FOR TEMPORARY
14   MINGA WOFFORD, et al.,                    RESTRAINING ORDER

15              Defendant.                     (Doc. No. 2)

16

17        This matter is before the court on petitioner's motion for temporary restraining order filed

18   on November 14, 2025.  (Doc. No. 2.)  For the reasons explained below, the court will grant

19   petitioner's motion.

20                                    BACKGROUND

21        On November 14, 2025, petitioner Alexis Ronaldo Ayala Cajina filed a petitioner for writ

22   of *habeas corpus* pursuant to 28 U.S.C. § 2241 challenging his detention by United States

23   Immigration and Customs Enforcement ("ICE").  (Doc No. 1.)  Petitioner asserts the following

24   two claims in that petition: (1) violation of the Fifth Amendment Due Process Clause; and

25   (2) violation of the Immigration and Nationality Act.  (*Id.* at ¶¶ 92-98.)  In support of the pending

26   motion for temporary restraining order, petitioner has presented evidence of the following.

27   /////

28
                                            1

1      Petitioner fled political persecution in Nicaragua and was detained upon entering the

2   United States on March 19, 2022.  (Doc. No. 2-2 at 14.)  Petitioner was issued a notice from the

3   Department of Homeland Security ("DHS") that he was inadmissible pursuant to 8 U.S.C.

4   § 1182(a)(6)(A)(i).  (*Id*.)  On March 21, 2022, petitioner was placed on an order of release on

5   own recognizance ("OR") under 8 U.S.C. § 1226.  (*Id*.)  Petitioner was instructed to report to the

6   ICE field office in Orlando, Florida on May 19, 2022.  (*Id*.)  Petitioner reported to that office as

7   ordered in May 2022, May 2023, and May 2024.  (*Id*. at 14–15.)  On June 23, 2024, petitioner

8   was arrested by the Concord Police Department and subsequently charged with driving under the

9   influence and on a suspended license in violation of California Vehicle Code §§ 23152(a),

10  23152(b), and 14601.5(a).  (*Id*. at 6.)  Petitioner pled not guilty, and those charges remain pending

11  against him in the Contra Costa County Superior Court.  (*Id.*)

12      On May 28, 2025, petitioner again reported as ordered at the ICE field office in Orlando,

13  Florida, at which time he requested that he be allowed to report in California because he was

14  relocating there.  (*Id.* at 15–16.)  Immigration officers informed petitioner that the agency was

15  aware of his arrest, enrolled him in the "Intensive Supervision Appearance Program" ("ISAP"),

16  and required him to wear an ankle monitor.  (*Id.*)  Petitioner was directed to report to the San

17  Francisco Field Office on June 9, 2025.  (*Id.*)

18      Petitioner attempted to report to the to the San Francisco Field Office on June 9, 2025, but

19  the office was closed and so he reported the following day.  (*Id.* at 16.)  At that time an ICE agent

20  reviewed petitioner's Executive Office for Immigration Review ("EOIR") documents and told

21  him to report again on September 10, 2025.  (*Id.* at 17.)  That same day, an ISAP officer removed

22  the ankle monitor from petitioner, and informed petitioner that he would thereafter check in "via a

23  biometrics photo" every Wednesday and either through video-call, home-visit, or an in-person

24  office check-in every month.  (*Id.*)  Petitioner complied with all of these reporting requirements.

25  (*Id*.)

26      On September 10, 2025, petitioner reported to the San Francisco ICE field office and was

27  detained, apparently due to his prior arrest in Contra Costa County.  (*Id.* at 12.)  Petitioner was

28  /////

1    served with an administrative warrant, issued under 8 U.S.C. § 1226, and transferred to the Mesa

2    Verda ICE Processing Center.  (*Id.* at 7.)

3            Petitioner filed the pending motion for temporary restraining order on November 14,

4    2025.  (Doc. No. 2.)  In that motion, petitioner requests that the court (1) order his immediate

5    release; or, in the alternative, (2) order petitioner's immediate release from respondent's custody

6    unless if, within fourteen days, respondents provide a hearing before a neutral adjudicator

7    regarding petitioners detention status; and (3) an order enjoining respondents from transferring

8    petitioner out the district during the pendency of the underlying proceedings to preserve the

9    court's jurisdiction. [1]  (Doc. No. 2 at 2.)  On November 17, 2025, the court directed petitioner's

10   counsel to serve respondents with a copy of the petition, the motion for temporary restraining

11   order, and accompanying papers, and set a briefing schedule on the pending motion.  (Doc. No.

12   5.)  Proof of service was filed with court in compliance with this order on November 17, 2025.

13   (Doc. No. 8.)  Respondents filed their opposition on November 18, 2025.  (Doc. No. 9.)

14                                   **LEGAL STANDARD**

15           The standard governing the issuing of a temporary restraining order is "substantially

16   identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v.*

17   *John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for

18   preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the

19   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

20   balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans,*

21   *Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council,*

22   *Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th

23   Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just

24   possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los*

25   *Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must

26

27   [1]  The court need not make an order preserving its jurisdiction because habeas petitions are
     properly heard in the district where the petitioner was detained when the petition was filed.  *See*
28   *Y.G.H. v. Trump*, 787 F. Supp. 3d 1097, 1105 (E.D. Cal. 2025).

1    make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

2    1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is

3    appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were

4    raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (citation

5    omitted).  The party seeking the injunction bears the burden of proving these elements.  *Klein v.*

6    *City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co.*

7    *v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than

8    merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate*

9    immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an

10   injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the

11   plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

12        The likelihood of success on the merits is the most important *Winter* factor.  *See Disney*

13   *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff bears the burden of

14   demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that

15   "serious questions going to the merits were raised."  *All. for Wild Rockies*, 632 F.3d at 1131.

16                                    **DISCUSSION**

17   **A.    Likelihood of Success on the Merits**

18        Petitioner argues that he is likely to succeed on his claim because due process and 8

19   U.S.C. § 1226 require that he be provided with a bond hearing before a neutral adjudicator.  (Doc.

20   No. 2-1 at 18, 26.)  Respondents argue that petitioner is not entitled to a bond hearing because he

21   is subject to detention pursuant to 8 U.S.C. § 1225.  (Doc. No. 9 at 2–3.)  Respondents do not

22   address petitioner's claim that he has a due process right to a hearing before a neutral adjudicator

23   even if were found to be subject to detention pursuant to 8 U.S.C. § 1225.  (Doc. No. 9.)

24        "The Due Process Clause of the Fifth Amendment prohibits the Government from

25   depriving individuals of their life, liberty, or property, without due process of law."  *Hernandez v.*

26   *Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all persons

27   within the United States, including aliens, whether their presence is lawful, unlawful, temporary,

28   or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001).  "Freedom from imprisonment—

1    from government custody, detention, or other forms of physical restraint—lies at the heart of the

2    liberty that Clause protects." *Id.* at 690. "Courts analyze procedural due process claims in two

3    steps: [T]he first asks whether there exists a protected liberty interest under the Due Process

4    Clause, and the second examines the procedures necessary to ensure any deprivation of that

5    protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-

6    TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corr. v.*

7    *Thompson*, 490 U.S. 454, 460 (1989)).

8        "[E]ven when an initial decision to detain or release an individual is discretionary, the

9    government's subsequent release of the individual from custody creates 'an implicit promise' that

10    the individual's liberty will be revoked only if they fail to abide by the conditions of their

11    release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug.

12    22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1971)); *see also Valencia Zapata v.*

13    *Kaiser*, — F. Supp. 3d —, No. 25-cv-07492-RFL, 2025 WL 2741654, at *6 (N.D. Cal. Sept. 26,

14    2025). "Accordingly, a noncitizen released from custody pending removal proceedings has a

15    protected liberty interest in remaining out of custody[]" where an immigration official "elected to

16    release" a petitioner on their own recognizance. *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-

17    EMC, 2025 WL 2637503, at *6–7 (N.D. Cal. Sept. 12, 2025); *see also Polo v. Chestnut*, No.

18    1:25-cv-01342-JLT-HBK, 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025) (collecting cases holding

19    that an individual released from immigration detention has a protected liberty interest in

20    continued release).

21        In this case, as in many others to have recently come before this court, petitioner acquired

22    a liberty interest in his continued freedom when DHS elected to release him in March 2022. *See*

23    *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *7 (N.D. Cal. Oct. 3,

24    2025) (finding that the petitioners' release "implied a promise that they would not be re-detained

25    so long as they abided by the terms of their release"); *F.M.V. v. Wofford*, No. 1:25-cv-01381-

26    KES-SAB (HC), 2025 WL 3083934, at *4 (E.D. Cal. Nov. 4, 2025) ( "[R]eliance on

27    governmental representations may establish a legitimate claim of entitlement to a constitutionally

28    protected interest."); *Valencia Zapata*, 2025 WL 2741654 at *6 ( "[A] noncitizen released from

1   custody pending removal proceedings has a protected liberty interest in remaining out of

2   custody.").

3        The court therefore need not determine whether § 1225 or § 1226 applies in this case

4   because petitioner has a liberty interest in his continued release regardless of the applicable

5   detention scheme.  *See Polo*, 2025 WL 2959346 at *11 (explaining that "even assuming

6   Respondents are correct that § 1225(b) is the applicable detention authority," the respondents

7   failed to contend with the "liberty interest created by the fact that the Petitioner . . . was released

8   on recognizance"); *Espinoza v. Kaiser*, No. 1:25-cv-01101-JLT-SKO, 2025 WL 2581185, at *10

9   (E.D. Cal. Sept. 5, 2025) (same); *Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL

10  2935630, at *5 (N.D. Cal. Oct. 15, 2025) (same); *Doe v. Becerra*, 787 F. Supp. 3d 1083 (E.D.

11  Cal. 2025) (finding the petitioner had a liberty interest in his continued liberty even though

12  petitioner had conceded that he was subject to mandatory detention under § 1225(b)(1)(B)(ii)).

13  Accordingly, the court finds that petitioner Ayala Cajina is likely to be successful as to his claim

14  that he has a liberty interest in his continued release.

15       "Due process 'is a flexible concept that varies with the particular situation.'"  *Singh v.*

16  *Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *6 (E.D. Cal. July 11,

17  2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).  The Supreme Court has identified

18  three factors that the court must consider in determining what process is constitutionally required:

19  (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous

20  deprivation of such interest through the procedures used, and the probable value, if any, of

21  additional or substitute procedural safeguards;" and (3) "the Government's interest, including the

22  function involved and the fiscal and administrative burdens that the additional or substitute

23  procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

24       As to the first factor, the court finds that petitioner has a strong private interest in his

25  continued release.  As noted above, petitioner was released in 2022 prior to being re-detained on

26  September 10, 2025.  During that time on release, immigration officers made multiple periodic

27  determinations that petitioner posed neither a flight risk nor a danger.  (Doc. No. 2-2 at 14–17.)

28  Petitioner asserts, and respondents do not contest, that there were not any changed circumstances

6

1   between the latest determination regarding petitioner's released in June 2025 and petitioner's

2   arrest on September 10, 2025.  (*Id.*)  The total length of time of his release strengthens

3   petitioner's interest in his continued release.  *Doe*, 787 F. Supp. 3d at 1093 ("Moreover, the

4   actions of the Government in allowing Petitioner to remain in the community for over five years

5   strengthen Petitioner's liberty interest.  Governmental actions may create a liberty interest entitled

6   to the protections of the Due Process Clause."); *see Garcia* 2025 WL 1927596 at *4 (where

7   petitioner was out of custody for two years, and made connections with his community that

8   created a "powerful interest" in his continued liberty); *see also Sun v. Santacruz*, No. 5:25-cv-

9   02198-JLS-JC, 2025 WL 2730235, at *5 (C.D. Cal. Aug. 26, 2025) (finding that the petitioner

10  had a substantial interest in remaining out of immigration custody because of the eight year length

11  of her release).   The court concludes that consideration of the first factor therefore weighs in

12  favor of granting petitioner the relief of being provided a pre-detention hearing before an

13  immigration judge.

14        As to the second factor, petitioner argues that the risk of erroneous deprivation is high

15  without a pre-detention bond or custody redetermination hearing in front of a neutral adjudicator

16  because immigration officials have already deprived him of his liberty absent a showing of

17  changed circumstances.  (Doc. No. 2-1 at 24–26.)  Several courts have already found that such a

18  risk is high in cases similar to petitioner's.  *See, e.g., Salcedo Aceros*, 2025 WL 2637503, at *12

19  (finding that the petitioner's risk of erroneous deprivation was high because a bond hearing would

20  likely reveal that the petitioner still presented no public safety or flight risk); *see also Calderon*,

21  2025 WL 2430609, at *3 ("Where an individual has not received a bond or redetermination

22  hearing, the risk of an erroneous deprivation of liberty is high."); *Pinchi v. Noem*, No. 25-cv-

23  05632-RMI-RFL, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025) (finding a risk of erroneous

24  deprivation without a bond hearing pre-detention where the petitioner was re-detained after

25  having been released on her own recognizance at the border by immigration officials).

26  Accordingly, the court concludes that consideration of the second *Eldridge* factor also weighs in

27  favor of granting petitioner the preliminarily relief he seeks.

28  /////

1    As to the third factor, petitioner argues that the government has only negligible interest in

2    re-detaining him without providing a pre-detention custody hearing in front of a neutral

3    adjudicator.  (Doc. No. 2-1 at 22–24.)  "In immigration court, custody hearings are routine and

4    impose a minimal cost."  *Salcedo Aceros*, 2025 WL 2637503, at *12 (internal quotation marks

5    omitted) (quoting *Singh*, 2025 WL 1918679, at *7); *see Espinoza*, 2025 WL 2581185 at *11

6    ("[T]he Court concludes that Respondents' interest in detaining Petitioners or re-detaining them

7    without a hearing, is slight.").  Respondents have made no argument that its interest in detaining

8    petitioner outweighs the cost of providing the additional process to which petitioner is due.

9    Accordingly, the court concludes that consideration of the final *Eldridge* factor also weighs in

10    favor of granting petitioner the preliminarily relief he seeks.[2]

11    Therefore, the court concludes that petitioner will likely succeed on the merits of his

12    procedural due process claim that his re-detention without a pre-detention hearing before a neutral

13    adjudicator was unlawful.  The court further concludes that the first *Winter* factor favors granting

14    petitioner's motion for a temporary restraining order requiring his release and a hearing before a

15    neutral adjudicator before any re-detention may occur.[3]  The court therefore need not and does

16    not address whether petitioner is likely to succeed on the merits of his statutory claim.

17    /////

---

18    [2] Petitioner's primary requested relief is release from custody and a hearing before a neutral

19    adjudicator where the government would bear the burden of proving that he is a danger to the
community or a flight risk.  (Doc. Nos. 2 at 2; 2-1 at 8–9.)  Respondent argues petitioner is not

20    entitled to any hearing and so does not address which party would bear the evidentiary burden at a
hearing.  (Doc. No. 9.)  Courts have held that due process requires the government to bear the

21    burden of proof at re-detention hearings when there has been a previous determination that the
petitioner was not a danger or flight risk.  *See Abduraimov v. Andrews*, No. 1:25-cv-00843-EPG-

22    HC, 2025 WL 2912307, at *10 (E.D. Cal. Oct. 14, 2025) (determining the government bore the
burden when petitioner had been previously released while pending removal proceedings in the

23    § 1225 context); *Pablo Sequen*, 2025 WL 2935630, at *13 (determining the government also bore

24    the burden when petitioner had been previously released in the § 1226 context).

25    [3] In the alternative to immediate release, petitioner requests that this court order he be provided a

26    bond hearing before a neutral adjudicator within fourteen days, and if not provided, then
immediate release.  Immediate release is the appropriate remedy here because petitioner is

27    likely to succeed on the merits of his claim that his detention was unlawful because respondents
have not shown that there was a change in circumstances between the immigration official's

28    custody determination on June 9, 2025, and petitioner's re-detention, on September 10, 2025.

1    **B.      Irreparable Harm**

2         Petitioner argues that he will suffer irreparable harm from his continued detention and

3    deprivation of his constitutional rights to due process in the absence of the granting of the

4    requested injunctive relief.  (Doc. No. 2-1 at 29.)  "[U]nlawful detention certainly constitutes

5    extreme or very serious damage, and that damage is not compensable in damages."  *Hernandez*,

6    872 F.3d at 999 (internal quotation marks omitted).  Likewise, "[i]t is well established that the

7    deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v.*

8    *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

9    Above, the court has concluded that petitioner will likely succeed on the claim that his continued

10   detention is unlawful.  The court therefore also concludes that petitioner has demonstrated

11   irreparable harm as to that detention and that consideration of this *Winter* factor favors granting

12   petitioner's motion for temporary restraining order for release and a hearing in front of a neutral

13   adjudicator prior to any re-detention.

14   **C.      Balance of Equities and Public Interest**

15        Petitioner argues that the last two *Winter* factors—the balance of equities and public

16   interest—favor the granting of his motion for temporary restraining order.  (Doc. No. 2-1 at 31.)

17   He contends that a violation of constitutional rights through indefinite detention would cause him

18   substantial harm whereas the burden on the government in releasing him until he is provided a

19   hearing would be minimal.  (*Id.*)

20        The consideration of the balance of equities and the public interest in an injunction merge

21   "[w]hen the government is a party[.]"  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th

22   Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  "Just as the public has an interest

23   in the orderly and efficient administration of this country's immigration laws, the public has a

24   strong interest in upholding procedural protections against unlawful detention."  *Hoac v. Becerra*,

25   No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *6 (E.D. Cal. July 16, 2025) (internal

26   quotation marks omitted) (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4).  Petitioner has

27   demonstrated that he will likely succeed on the merits of his unlawful re-detention claim for the

28   reasons explained above.  Therefore, the court concludes that consideration of the last two *Winter*

9

1   factors also favor granting petitioner's motion for temporary restraining order for release and a

2   subsequent hearing in front of a neutral adjudicator to determine whether petitioner is a danger to

3   the community or a flight risk prior to any re-detention.

4   **D.      Status Quo**

5          "The status quo *ante litem* is the last uncontested status which preceded the pending

6   controversy." *Hoac*, 2025 WL 1993771, at *7 (internal quotation marks and brackets omitted)

7   (quoting *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)).  "A TRO

8   immediately releasing Petitioner is appropriate to return him to the status quo. . . . That is the

9   moment prior to Petitioner's likely illegal detention." *Larios v. Albarran*, No. 25-cv-08799-

10  AMO, 2025 WL 2939223, at *3 (N.D. Cal. Oct. 16, 2025).  Accordingly, the court concludes that

11  the immediate release of petitioner on the same conditions he was subject to prior to his detention

12  on September 10, 2025, is necessary to restore the status quo.

13                                        **CONCLUSION**

14  For the reasons above,

15          1.      Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED

16                  in part as follows:

17                  a.      Respondents are ORDERED to immediately release petitioner from

18                          respondents' custody with the same conditions he was subject to

19                          immediately prior to his detention on September 10, 2025;

20                  b.      Respondents are ENJOINED AND RESTRAINED from re-detaining

21                          petitioner for any purpose, absent exigent circumstances, without providing

22                          petitioner notice and a pre-detention hearing before an immigration judge

23                          where respondents will have the burden to demonstrate that petitioner is a

24                          danger to the community or a flight risk; and

25          2.      The parties are directed to meet and confer and, if possible, submit a joint

26                  proposed briefing schedule and hearing date with respect to any motion for a

27                  preliminary injunction no later than fourteen (14) days from the date of entry of

28                  this order; and

                                              10

3.      Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated:  __**November 21, 2025**__          _____*Dale A. Drozd*_____
                                                                DALE A. DROZD
                                                                UNITED STATES DISTRICT JUDGE